OPINION
{¶ 1} Sherri Ellis appeals from the judgment of the Fairborn Municipal Court of Contributing to the Delinquency of a Minor after a bench trial.
 {¶ 2} Ellis was accused of agreeing to pay a minor, Steven Hastings, to vandalize her landlord's truck. The landlord, Ronald Lehman, testified that Ellis vacated her apartment pursuant to an eviction notice the day before his truck was damaged.
 {¶ 3} Lehman testified that he was advised on that day by a co-worker that the truck had a long scratch from the passenger door to the tailgate on the passenger side. Lehman testified he put out a reward to children in the neighborhood for any information about the offender.
 {¶ 4} On cross-examination, Lehman admitted he had been having trouble with youth in the neighborhood who might have possibly done the vandalism. He also admitted he did not know when the vandalism occurred.
 {¶ 5} On cross-examination, Lehman admitted he wasn't sure if Sherri Ellis had been out of the home rented from him by August 1. Tr. P. 16. Defense Counsel proceeded to ask questions as to what Lehman may have said to the reporting officer, Officer Hiles, of the Fairborn Police Department. Tr. P. 17. There occurred the following exchange between Defense Counsel and State's witness Ronald Lehman:
 {¶ 6} "Q. What did you tell Officer Hiles when he first came to your house?
 {¶ 7} "A. Well, I was saying that I was very upset with her because I had just been told that prior day that it has been — I noticed it had been scratched. He asked me a few questions. And I told him where it was parked and there were several boys standing there. And I had a witness and I had put out a street reward of $50. And he went from there. He went to investigate.
 {¶ 8} "Q. Isn't it true, Mr. Lehman, that you told Officer Hiles on the 20th of August, 2002, that it probably happened where it was parked in front of your house the night before?
 {¶ 9} "A. No, I did not say that to him.
 {¶ 10} "Q. Are you saying, when he wrote that in his report, he was making it up?
 {¶ 11} "A. I wasn't — I don't remember saying that part of it to him. As far as I was concerned at that time, it may have happened right at that apartment where I was parked. Actually, it was probably 500 feet from the exact apartment where she lived.
 {¶ 12} Defense Counsel proceeded to question Lehman about the existence of "flyers" pertaining to the accident of the truck. Tr. P. 18. Lehman replied that there were no "flyers" and that he was referring to 30 day eviction notices.
 {¶ 13} As its second witness the State called Micah J. Lowrie to the stand. Tr. P. 27. Mr. Lowrie testified that he was friends with the defendant. Tr. P. 28. Mr. Lowrie testified that there was an occasion when he was speaking to Defendant and Steven Matthew Hastings, Aaron Schroeder, Marcus Ellis, and his cousin John Fugate were present. Tr. P. 29, 30. Mr. Lowrie testified that Defendant, "was asking quite a few of the neighbor kids around if they would damage his truck or vandalize it, and she would pay them to do it." Tr. P. 30, 31. Mr. Lowrie testified that his cousin Steven Hastings, "Agreed to do it." Tr. P. 31. Micah Lowrie further testified that Steven Hastings did do the damage after which he was contacted by Defendant and told to contact Steven "Matt" Hastings for her. Tr. P. 32. Mr. Lowrie further testified that he wasn't sure if Steven "Matt" Hastings had been paid for this alleged damage to this truck, but he thought the payment amount was around 50 to $100. Tr. P. 33.
 {¶ 14} On cross-examination defense counsel asked Micah Lowrie to repeat the names of the other witnesses that were present. Tr. P. 33. Mr. Lowrie restated who was present when Sherri Ellis made the "offer" right before she was evicted. Tr. P. 34, 35.
 {¶ 15} On direct-examination, the prosecuting attorney called witness Steven "Matt" Hastings. Mr. Hastings testified that he was at a meeting with other children present when Sherri Ellis stated, ". . . She said she would pay money to anybody that would damage that truck because he was evicting her." Tr. P. 42. Mr. Hastings then admitted that he damaged Mr. Lehman's truck.
 {¶ 16} Defense counsel then conducted a brief cross-examination of Mr. Hastings. Tr. P. 45-50. After which, the State declined to call any further witnesses and rested its case. Tr. P. 50.
 {¶ 17} The defense presented a number of character witnesses on behalf of the defendant. The defendant testified that she had nothing to do with the vandalism of Lehman's truck. At the conclusion of all the testimony, the trial court found the defendant guilty.
 {¶ 18} The defendant moved for a new trial alleging that the two State witnesses stated other persons were present at the meeting with the defendant, and that the defendant was prepared to present witnesses that he was not present at the meeting as had been testified by the two witnesses. The trial court overruled the motion because the witnesses had been identified in discovery but simply were not interviewed.
 {¶ 19} Appellant contends his counsel was constitutionally ineffective because he failed to call Officer Hiles to contradict testimony given by the complaining witness. The record, however, is simply not clear about how Hiles would have contradicted the complainant. The police report was never admitted in evidence. The complaint stated he offered a street reward for information about who was responsible for the vandalism. He stated he could not recall whether he told Officer Hiles that he passed out flyers on the 800 block of Winston. Tr. P. 20. We fail to see how such a discrepancy, even if admitted, would have any material effect on the outcome of the trial. Appellant also contends counsel was ineffective for failing to contact certain witnesses who were listed in discovery. He contends that had counsel done so, the identify of other individual witnesses would have been learned. The record, however, does not disclose any failure of counsel's investigation that would have any material impact on the outcome. Strickland v. Washington (1984), 466 U.S. 668
at 687.
 {¶ 20} In a separate assignment, appellant contends the trial court erred in denying his motion for a new trial upon the discovery of new evidence. In support of his motion, Ellis supplied the affidavit of Aaron Schroeder who stated he was not at a meeting with appellant as testified to by two State's witnesses, when the appellant offered money for someone to damage the victim's truck.
 {¶ 21} When the basis of a motion for a new trial rests upon new evidence, Defendant must meet six requirements that were set out by the Supreme Court. State v. Petro (1947), 148 Ohio St. 505, 76 N.E. 2d 370. Defendant must show the evidence (1) discloses a strong probability that it will change the result if new trial is granted; (2) has been discovered since the trial; (3) is such as could not in the exercise of due diligence have been discovered before the trial; (4) is material to the issues; (5) not merely cumulative to former evidence; (6) and does not merely impeach or contradict the former evidence. Id. at 505,Syllabus.
 {¶ 22} The State argues that Schroeder's affidavit is merely "impeaching" evidence and, in any event, the trial court heard similar defense witnesses and still chose to believe Steven Hastings' testimony. There was no evidence produced at trial to suggest that the State provided any inducements for Hastings' testimony which was, after all, against his own penal interest. Hastings' testimony was corroborated by Micah Lowrie. There is no probability that a different result at a new trial would result from the introduction of Schroeder's testimony. Cityof Dayton v. Martin (Oct. 21, 1987), Montgomery App. No. 10242. The second assignment of error is likewise overruled.
 {¶ 23} The judgment of the trial court is affirmed.
Fain, J., and Grady, J., concur.